UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:11-CR-79-GFVT-HAI-6 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| SHANE COLLINS, ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 255), the Court considers reported violations of supervised release conditions by Defendant Shane Collins. This is his second revocation.

**I.**

Judge Van Tatenhove entered a judgment against Defendant in February 2013 after he pleaded guilty to one count of conspiracy to distribute oxycodone and methadone (21 U.S.C. §§ 841(a)(1), 846) and possession of a firearm in furtherance of a drug trafficking offense (18 U.S.C. § 924(c)). D.E. 187. He was sentenced to 111 months of imprisonment and three years of supervised release. *Id.* at 2-3. His imprisonment sentence was later reduced to 101 months. D.E. 225. Defendant was first released from custody on July 11, 2019.

On February 13, 2020, the United States Probation Office ("USPO") initiated revocation proceedings. According to the USPO, Defendant had failed to report as directed or submit a monthly report as directed. When Defendant's probation officer attempted a home visit, Defendant had moved out. Defendant also could not be contacted by phone. Defendant

ultimately stipulated to the two charged Grade C violations. He was sentenced to time served, followed by a new 36-month term of supervision that included twelve consecutive weekends of intermittent confinement. D.E. 236. Defendant was released on April 14, 2020. Judge Van Tatenhove later modified the intermittent-confinement condition to twelve consecutive weekends of home confinement due to the jail's COVID policies. D.E. 245.

## II.

On April 5, 2021, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a single Grade-C violation of Defendant's intermittent-home-confinement condition. According to the report:

> On January 11, 2021, Mr. Collins' condition for weekends of intermittent confinement in jail was modified to be served under home confinement. On February 19, 2021, Mr. Collins began his first weekend of home confinement. Mr. Collins was instructed to maintain his cell phone because this would be one of the methods used to confirm his compliance with weekend home confinement. On March 21, 2021, the undersigned attempted to contact Mr. Collins several times via cell phone with no response. On the evening of March 26, 2021, this undersigned attempted to call and text Mr. Collins, again, with no response. On the morning of March 28, 2021, the undersigned attempted to make contact with Mr. Collins at his home to confirm compliance with weekends of home confinement, however no one was home at that time. Mr. Collins did contact the undersigned later that date to advise of a new phone number. When confronted about his failure to follow his weekend confinement he advise[d] he thought the undersigned would contact him every weekend he was to serve. Mr. Collins confirmed he did not follow the home confinement rules. When asked how long he had the new number he advised a few days.

Defendant was ordered to appear via summons. D.E. 255. On May 4, 2021, the Court conducted an initial appearance on the violation allegations pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure. D.E. 260. The government did not seek interim detention. Defendant was released on the current conditions "with added bond conditions pursuant to Rule

2

32.1(a)(6) that he be: 1. on home confinement with active GPS monitoring; and 2. drive only (a) to and from work or (b) as approved in advance by the USPO." *Id.*

On May 11, 2021, the USPO issued an Addendum to the Report. According to the Addendum,

> On May 6, 2021, United States Probation Officer Nick Sloan made contact with Mr. Collins at his home to provide another recharger for his GPS device and to administer a drug test. Mr. Collins provided a urine sample that indicated the presence of methamphetamine and marijuana via instant cup. Mr. Collins spoke with the undersigned, via telephone, a short time later, and he admitted to using methamphetamine and marijuana.

Violation #2 charges a Grade C violation of the condition that Defendant must refrain from any unlawful use of a controlled substance.

The Addendum also charges in Violation #3 a Grade B violation of the condition that Defendant not commit another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use of methamphetamine and marijuana (on account of his prior drug conviction) constitutes a Class E felony under 21 U.S.C. § 844(a).

The Court conducted an initial appearance on the allegations in the Addendum on May 13, 2021. D.E. 264. Defendant knowingly, voluntarily, and intelligently waived his right to a preliminary hearing. *Id.* The government moved for interim detention; Defendant argued for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on June 3, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 265. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings,

3

Defendant admitted the factual basis for the violations as described in the Report and Addendum. Defendant admitted his drug use. He also agreed with his probation officer's description that he had missed several weekends of intermittent home confinement. These weekends were supposed to begin on February 19 and continue for the following twelve weeks. The government thus established Violations #1, #2, and #3 under the standard of § 3583(e).

### III.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's underlying conviction includes a Class A felony. This results in a five-year maximum period of incarceration upon revocation pursuant to § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under Section 7B1.1, Defendant's admitted conduct constitutes Grade C violations for Violation #1 and #2 and a Grade B violation for Violation #3. Given Defendant's criminal history category of II (the category at the time of the conviction) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months. U.S.S.G. § 7B1.4(a).

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction for a conspiracy to distribute oxycodone and methadone does not carry a maximum term of supervised release. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A)(viii).

**IV.**

At the final hearing, the government requested revocation with a within-Guidelines sentence of ten months of incarceration to be followed by a new two-year term of supervised release. The defense requested time-served plus up to 24 months of supervision beginning with six months of home incarceration.

According to the government, focusing on Defendant's breach of the Court's trust is a "particularly apt" approach here. There exists also a need to deter criminal conduct and protect the public. The government recounted how Defendant received a bottom-of-the-Guidelines sentence on his underlying conviction for drug trafficking and possessing a firearm in furtherance of the trafficking. Defendant then was shown leniency last year with a below-Guidelines sentence on his violations. That sentence became even more lenient when it was understandably modified to intermittent home incarceration instead of intermittent weekend confinement at a jail. According to the government, this lenient sentence placed a great deal of trust in Defendant's promise that he would do better. And that prior leniency justifies a severe sentence now.

The government also expressed concern that Defendant had used meth when meth use was not previously documented in Defendant's record. Previously Defendant had used mostly alcohol. The meth use also increased the need for deterrence, given that obtaining meth involves

5

support of criminal trafficking. The government noted that Defendant had begun outpatient treatment in October 2020, and suggested that treatment continue at the discretion of the USPO.

The defense understandably tried to place Defendant's conduct in the context of a life that was improving. According to the defense, Defendant's criminal history is old and not that bad. Defendant has achieved a measure of stability in that he has a supportive family including a girlfriend and an infant child. Defendant's girlfriend is a manager of a restaurant and she says Defendant has a job and an apartment of his own waiting for him. The defense argued that, given these personal strides, incarcerating Defendant would move him backward.

According to the defense, Defendant is not habitually disrespectful of the law. He has always accepted responsibility. He has not lied to his probation officer. In fact, he telephoned Officer Collins and admitted everything.

The defense argued that financial problems caused Defendant to change phones. Now that he has been in jail for three weeks (effectively making up the time he missed on intermittent confinement), Defendant has been reminded of what being imprisoned is really like. Given this wake-up call, the defense argued that further incarceration would not be necessary.

Instead, the defense proposed six months of home incarceration. Defendant would have to be home during non-work hours. He would have to provide his schedule to his probation officer in advance.

The defense also recommended a mental health evaluation. According to the defense, Defendant has puzzlingly had trouble keeping up with ordinary little things in his life, which echoes what the defense argued last year.

As he did last year, Defendant addressed the Court at length. He said he did not deserve to go back to prison. He said he had admitted the conduct, turned himself in, and appeared on

the summons. He said he had just missed up some little things. He explained that he had temporarily gotten into a bad relationship that led to getting in bad financial shape and the violations. Unwisely, he had left the mother of his child. Now, he said, he works. He is back with his child and its mother and has moved away from where the bad situation was. He said being in jail has reminded him of what imprisonment is like. He said he is ready to go back to being who he was before he got into the bad relationship. The girlfriend and baby were present at the hearing.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The Court first considers the nature and circumstances of Defendant's underlying conviction. The conviction is serious and continues to cast a shadow. Defendant's drug addiction led him to participate in a conspiracy wherein he made trips to Florida to obtain drugs. His behavior certainly harmed the community, and this was aggravated by his decision to go armed. It is very concerning that the current violations include the use of marijuana and methamphetamine. Dealing with traffickers raises the possibility that Defendant could again become involved in trafficking.

The Court next considers Defendant's history and characteristics and the need to protect the public and deter future criminal conduct. What stands out is that, like last year, the defense painted the picture of Defendant as a working, responsible family man who admits his mistakes and has only messed up on supervision in small ways. But the violations this time have escalated. Because of Defendant's methamphetamine use, the threat to the public has increased this time around. Gentle treatment did not deter him from committing additional violations.

Another factor is the need for additional training or treatment. The defense has requested a mental health evaluation. The government did not object, so the undersigned recommends the addition of a new condition that Defendant must comply with any mental health treatment at the direction and discretion of the Probation Office.

The Guidelines suggest the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, the trust breach is the dominant factor. Last time, Defendant asked for a chance to prove he was serious about living a clean life. Now,

8

once again, Defendant has violated his conditions in a way that made him difficult to locate and to contact. Last time, Defendant was proud of being drug-free. But now, he has admittedly used marijuana and methamphetamine—a stronger drug than what he has used before. Even worse, Defendant used these drugs shortly after appearing in this Court on the initial Violation and when he knew he had another pending Court date. This was reckless and disrespectful. Granted, Defendant has continued to be honest with his probation officer and accept responsibility. And this must continue. But the severity of the trust breach, particularly on a second revocation following a lenient past sentence, warrants a serious penalty. He was warned last time that "future violations may be treated more harshly."

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. As here, this factor is usually addressed by imposing a within-Guidelines sentence. On a first violation, the Court would normally begin with considering a middle-Guidelines sentence (which here would be nine months). Defendant was given a below-Guidelines sentence last time, so a sentence above the middle is appropriate this time around. Although a higher sentence is supportable on this record, the Court concludes that a sentence of revocation with ten months of incarceration, followed by 24 months of supervised release, is sufficient, but not greater than necessary, to meet the section 3553(a) factors incorporated into this analysis. See 18 U.S.C. § 3583(e).

## VI.

Based upon the foregoing, the Court **RECOMMENDS**:

(1)   That, upon his stipulation, Defendant be found guilty of Violations #1, #2, and #3.

(2)   Revocation with a term of imprisonment of ten months.

(3) Upon release, imposition of a new 24-month term of supervised release under Judge Van Tatenhove's previous conditions (D.E. 236) with the added condition that Defendant must fully comply with any mental health treatment at the direction and discretion of the probation officer.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FOURTEEN DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 8th day of June, 2021.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge